UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA | |
|---|---|
| -v.- | 20 Cr. 3-12 (KPF) |
| DARREL WILLIAMS, | **ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

Defendant Darrel Williams,[1] who is currently incarcerated at the Federal Correctional Center (Low) in Allenwood, Pennsylvania ("FCI Allenwood"), has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), citing the ongoing COVID-19 pandemic, the conditions of his confinement, and his family circumstances. The Government opposes his motion. As set forth in the remainder of this Order, the Court denies Mr. Williams's motion without prejudice because of his failure to exhaust his administrative remedies.

## BACKGROUND

On January 2, 2020, Mr. Williams was charged in an indictment with conspiracy to commit bank and wire fraud, in violation of 18 U.S.C. § 1349 (Count One); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Two); and aggravated identity theft, in violation of 18 U.S.C.

---

[1] The instant motion is signed by Mr. Williams, and it reflects the spelling of his first name as "Darrell." However, because the charging, plea, and sentencing documents all list his first name as "Darrel," and, more importantly, because Mr. Williams's Bureau of Prison ("BOP") records also list his first name that way, this Court adopts the spelling convention of those earlier documents, even if mistaken, in order to ensure that its orders are received by Mr. Williams.

§ 1028A (Count Three). (Dkt. #39 ("Indictment")). The Indictment charged Mr. Williams and others with participating in a scheme to defraud banks and to launder the proceeds of frauds that was perpetrated against dozens of victims. (Dkt. #95). As described in Mr. Williams's Presentence Investigation Report, to which the defense did not object:

> During the relevant period [in or about April 2018 through in or about September 2019], members of the conspiracy opened more than 60 business bank accounts at various banks in Virginia, Maryland, and New York City, among other locations (the Bank Accounts).
>
> The Bank Accounts were typically opened using the name of a business entity, and members of the conspiracy who established these accounts used the personal identifying information, including names and Social Security numbers, of other individuals. The members of the conspiracy then deposited stolen or fraudulent checks into the Bank Accounts. Afterwards, members of the conspiracy withdrew funds, mainly in the form of cash withdrawals, against the deposited checks. Certain members of the conspiracy maintained online access of the Bank Accounts, the activities of which they monitored electronic devices.
>
> The checks deposited into the bank accounts opened by the members of the conspiracy were either forged checks or checks stolen from various entities. For example, the defendants illegally obtained checks that had been mailed by a national sports league located in New York, NY. In other instances, the members of the conspiracy fraudulently obtained wire and automated clearinghouse (ACH) transfers into the bank accounts they controlled. For example, a member of the conspiracy posing as a victim's financial advisor caused the victim to wire funds from a bank account in New York, NY, to an account controlled by members of the conspiracy.
>
> The overall conspiracy caused a total loss of at least $18 million. …

(Dkt. #100 (Final Presentence Investigation Report ("PSR")) at ¶¶ 15-17).

On June 20, 2020, Mr. Williams pleaded guilty to conspiracy to commit bank fraud and wire fraud, in violation of 18 U.S.C. § 1349. (Dkt. #101 (plea transcript)). The plea was entered pursuant to a written plea agreement with the Government in which the parties stipulated that the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 27 to 33 months' imprisonment. (PSR ¶ 8). During his plea allocution, Mr. Williams admitted to agreeing with others to open up bank accounts under false names, to deposit fraudulent checks and stolen checks, and then to withdraw the proceeds. (Dkt. #101 at 45).

Sentencing in the matter took place on October 13, 2021. (Dkt. #131 (sentencing transcript); *see also* Dkt. #118 (judgment)). The delay was occasioned by the COVID-19 pandemic, and with Mr. Williams's consent, the proceedings were conducted by videoconference. During the sentencing proceeding, the Court discussed with the parties, among other topics, the interplay of the instant case and a theft by deception conviction in New Jersey state court for which Mr. Williams was due to appear for a parole hearing. (Dkt. #131 at 6-8, 19-26). Ultimately, the Court varied downwardly to a term of 18 months' imprisonment, of which 10 months was ordered to run consecutively to Mr. Williams's New Jersey sentence. The Court understands that Mr. Williams is due to be released from federal custody on December 7, 2022. *See* https://www.bop.gov/inmateloc/ (last accessed Oct. 10, 2022).

Mr. Williams filed a *pro se* motion for compassionate release on August 7, 2022, which was docketed on August 24, 2022. (Dkt. #387). The Government opposed Mr. Williams's motion in a letter brief dated September 21, 2022. (Dkt. #396).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant. After the First Step Act, district courts now consider two questions in resolving these motions: (i) whether extraordinary and compelling circumstances merit reducing the sentence and (ii) whether the applicable factors under 18 U.S.C. § 3553(a) warrant the reduction. *See United States* v. *Pabon*, No. 17 Cr. 312 (JPC), 2021 WL 603269, at *2 (S.D.N.Y. Feb. 16, 2021). In considering compassionate release motions, the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13 no longer limits district courts. *See United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Instead, courts may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.*

As dispositive here, an incarcerated defendant may move for compassionate release or otherwise for a reduction in his or her sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or

4

the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This "exhaustion requirement is a claim-processing rule that may be waived or forfeited by the government." *United States* v. *Saladino*, 7 F.4th 120, 121 (2d Cir. 2021) (per curiam).

In this case, the Government has not waived or forfeited this requirement, but rather asserts that Mr. Williams's motion should be denied because of his failure to exhaust his administrative remedies. (Dkt. #395 at 3). For his part, Mr. Williams requests that he be permitted to "bypass the administrative exhaustion requirement." (Dkt. #387 at 2). In particular, Mr. Williams notes that, en route to FCI Allenwood, he has been detained at the Philadelphia Federal Detention Center ("FDC-Philadelphia"), where BOP officials refuse to submit compassionate release applications for male inmates. (*Id.*). The Government responds that no such policy exists at FDC, and that in any event, Mr. Williams was transferred to FCI Allenwood on August 22, 2022, and could submit his request there. (Dkt. #395 at 3).

Because Mr. Williams "bears the burden of . . . establishing . . . that he exhausted administrative remedies in pursuing [a] sentence reduction," and has failed to do so, the Court denies his motion for compassionate release. *United States* v. *Ruiz*, No. 10 Cr. 74 (JFB), 2022 WL 493389, at *1 (E.D.N.Y. Feb. 16, 2022); *accord United States* v. *Awulye*, No. 13 Cr. 875 (RJS), Dkt. #114 at 2 (S.D.N.Y. Mar. 28, 2022) (denying a motion for compassionate release when "[t]he government . . . represent[ed] that it had no record" of exhaustion

5

and the defendant did "not submit[] any proof" of exhaustion"). This denial is without prejudice. Mr. Williams may renew his request after complying with Section 3582(c)(1)(A)'s administrative exhaustion requirements with respect to a reduction of his sentence.

The Clerk of Court is directed to terminate the motion at docket entry 387. The Clerk of Court is further directed to mail a copy of this Order to Mr. Williams at the following address: Darrel Williams, Reg. No. 09296-050, FCI Allenwood Low, Federal Correctional Institution, P.O. Box 1000, White Deer, PA 17887.

SO ORDERED.

Dated:   October 11, 2022
         New York, New York

*Katherine Polk Failla* (signature)

_____
KATHERINE POLK FAILLA
United States District Judge